1

2

3

4

5               UNITED STATES DISTRICT COURT

6               EASTERN DISTRICT OF CALIFORNIA

7

8   GERRY RENEE POTTS,                    Case No. 1:21-cv-00625-CDB (SS)

9                    Plaintiff,           ORDER DENYING PLAINTIFF'S MOTION
                                          FOR SUMMARY JUDGMENT AND
10         v.                             AFFIRMING THE COMMISSIONER

11  COMMISSIONER OF SOCIAL                (Doc. 20)
    SECURITY,
12
                     Defendant.
13

14

15         Plaintiff Gerry Renee Potts ("Plaintiff") seeks judicial review of the decision of the

16  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

17  disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  (Doc.

18  1).  The matter is before the Court on the certified administrative record ("AR").  (Doc. 17).

19  Plaintiff filed a motion for summary judgment on December 27, 2021.  (Doc. 20).  Defendant

20  filed an opposition on February 10, 2022.  (Doc. 22).  Thereafter, Plaintiff filed a reply brief on

21  February 25, 2022.  (Doc. 23).  For the reasons set forth below, the Court denies Plaintiff's

22  motion for summary judgment and affirms the commissioner.[1]

23  **I.      Background**[2]

24         On March 2, 2018, Plaintiff protectively filed applications for DIB and SSI.  (AR 16, 27,

25  283).  Plaintiff's applications alleged disability beginning December 17, 2016.  (AR 290).  The

26      _____
        [1]  The parties have consented to the jurisdiction of a magistrate judge for all proceedings
27  in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 16).

28         [2] The procedural background is recounted to the extent that it is relevant to Plaintiff's
    arguments before the Court.

1   claims were initially denied on April 27, 2018 (AR 192-96), and upon reconsideration on July 12,

2   2018.  (AR 200-05).  On August 15, 2018, Plaintiff filed a request for hearing (AR 206-07), and

3   on April 29, 2020, an administrative law judge ("ALJ") held a telephonic hearing.  (AR 121-43).

4   Plaintiff testified at the hearing with the assistance of counsel.  (AR 127-40).  An impartial

5   vocational expert ("VE") also testified at the hearing.  (AR 140-42).  On June 2, 2020, the ALJ

6   issued a decision finding Plaintiff "not disabled."  (AR 13-32).  Plaintiff requested a review of

7   that decision, which was denied on February 19, 2021.  (AR 1-7). Thereafter, Plaintiff initiated

8   this action on April 15, 2021.  (Doc. 1).

9       The ALJ engaged in the five-step sequential evaluation process for determining whether

10  an individual is disabled under 20 C.F.R. § 404.1520(a).  At step one, the ALJ found that Plaintiff

11  had not engaged in substantial gainful activity since December 17, 2016.  (AR 18).  At step two,

12  the ALJ found that Plaintiff's asthma, varicose veins, depression, and generalized anxiety

13  disorder ("GAD") were severe impairments.  *Id*.  However, the ALJ found that although there

14  was evidence of rotoscoliosis on the record, that impairment was not severe enough to cause a

15  physical or mental limitation in Plaintiff's ability to do work activities.  *Id*.

16      At step three, the ALJ found that Plaintiff did not have an impairment or combination of

17  impairments that meets or medically equals the severity of a listed impairment.  (AR 19).  The

18  ALJ considered and found that Plaintiff's condition did not meet or medically equal a listing for

19  asthma.  *Id*.  The ALJ also found that the severity of Plaintiff's mental impairments did not meet

20  or medically equal the criteria of listings 12.04 (depressive, bipolar, and related disorders) and

21  12.06 (anxiety and obsessive-compulsive disorders).

22      In making his finding, the ALJ considered whether the "paragraph B" criteria were

23  satisfied.[3]  *Id*.  The ALJ found that Plaintiff had a mild limitation in the functional areas of

24  "understanding, remembering, or applying information."  The ALJ also found a mild limitation in

25

26      [3] The "paragraph B criteria" evaluates mental impairments in the context of four broad
    areas of functioning: (1) understanding, remembering, or applying information; (2) interacting
27  with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing
    oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in
28  each of the four areas of functioning is identified as either "no limitation," "mild," "moderate,"

2

1   the functional areas of" interacting with others" as well as "adapting or managing" herself.  (AR

2   19-20).  The ALJ found a moderate limitation in the functional area of "concentrating, persisting,

3   or maintaining pace."  (AR 20).  Since Plaintiff's mental impairments did not cause at least two

4   "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria

5   were not satisfied. *Id.*

6         The ALJ also considered whether the paragraph C criteria was satisfied but found that the

7   record did not establish that Plaintiff had only a minimal capacity to adapt to changes in her

8   environment or to demands that are not already part of her daily life.[4]  *Id.*

9         The ALJ found Plaintiff's residual functional capacity ("RFC") to be as follows:

10              [T]he claimant has the residual functional capacity to perform light
                work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except
11              the claimant can perform frequent postural activities except the
                claimant can only occasionally climb ladders, ropes, or scaffolds.
12              The claimant must avoid concentrated exposure to fumes, odors,
                dusts, gases, and poor ventilation.  The claimant is limited to simple,
13              routine, and repetitive tasks.

14   (AR 21).  The ALJ determined that Plaintiff cannot perform her past relevant work as a veterinary

15   technician.  (AR 24-25).  At step five, the ALJ found that Plaintiff's ability to perform all or

16   substantially all the requirements of light work had been impeded by additional limitations.  (AR

17   26).  The ALJ asked the VE whether jobs exist in the national economy for an individual with

18   Plaintiff's age, education, work experience, and RFC.  *Id.*  The VE testified that a hypothetical

19   person with Plaintiff's age, education, work experience, and RFC would be able to work as an

20   Office Helper, Dictionary of Operational Titles ("DOT") code 239.567-010 with a specific

21   vocational preparation ("SVP") of two; Photocopy Machine Operator, DOT code 207.685-014

22   with an SVP of two; and Garment Sorter, DOT code 222.687-014, with an SVP of two.  *Id.*; (AR

23   139-41).  The ALJ found the VE's testimony consistent with the information contained in the

24   _____

25        [4] To satisfy the "paragraph C" criteria, there must be a medically documented history of
     the existence of the mental disorder in the listing category over a period of at least two years and
26   there must be evidence of both: (1) medical treatment, mental health therapy, psychosocial
     support (s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and
27   signs of the mental disorder; and (2) marginal adjustment, that is, minimal capacity to adapt to
     changes in the environment or to demands that are not already part of daily life.  20 C.F.R. § Pt.
28   404, Subpt. P, App. 1.

DOT.  (AR 26).

The ALJ's ruling noted that Plaintiff's representative objected to the VE's testimony.  *Id.* The representative contended that the VE's testimony included jobs that required the ability to carry out detailed oral or written instructions, which purportedly was inconsistent with the RFC limitation to simple, routine, and repetitive tasks.  *Id.*  The ALJ denied the representative's objection, stating that he provided the VE with hypotheticals specifically setting the limitation to simple, routine, and repetitive tasks.  *Id.*  Ultimately, the ALJ based his finding of "not disabled" on the testimony of the VE, and upon consideration of Plaintiff's age, education, work experience, and RFC.  *Id.*

## II.   Standard of Law

### A.   The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[5]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

1    *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

2    on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing

3    *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)).

4            Before making the step four determinations, the ALJ first must determine the claimant's

5    RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their

6    limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§

7    404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments,

8    including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2).  *E.g.*, *Wells v.*

9    *Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

10   assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

11   medically determinable impairments, whether severe or not severe.").  The RFC is not a medical

12   opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to

13   the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

14   Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

15   residual functional capacity.")

16           At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

17   other work in the national economy given the claimant's RFC, age, education, and work

18   experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

19   either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsbury v.*

20   *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

21   Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

22   credibility, resolving conflicts in medical testimony and for resolving ambiguities.'"  *Ford*, 950

23   F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

24       **B.    Standard of Review**

25           Congress has provided that an individual may obtain judicial review of any final decision

26   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

27   determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

28   party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

1   court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

2   legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

3   (9th Cir. 1999).

4        "Substantial evidence is relevant evidence which, considering the record as a whole, a

5   reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278

6   F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

7   1457 (9th Cir. 1995)).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

8   *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

9   scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

10  *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

11       "[A] reviewing court must consider the entire record as a whole and may not affirm

12  simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153,

13  1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

14  to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*,

15  950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

16  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

17  454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

18  nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

19  (quotation and citation omitted).  The burden of showing that an error is not harmless "normally

20  falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396,

21  409 (2009).

22  **III.    Discussion**

23       Plaintiff advances two arguments for the Court's review: (1) The ALJ committed harmful

24  error at step five of the sequential evaluation process when he failed to reconcile a conflict

25  between the VE's testimony and her RFC; and (2) The ALJ and Appeals Council's decisions are

26  constitutionally defective due to a statutory scheme that violates separation of powers.

27       **A.    Whether the ALJ Committed Harmful Error at Step Five**

28       Plaintiff argues that the ALJ erred at step five as he accepted the three occupations

1   identified by the VE – each of which implicates a reasoning level of two – whereas the ALJ's

2   RFC limitation to only simple, routine, and repetitive tasks conflicts with the occupations'

3   reasoning levels.  *See* (Doc. 20; AR 41).  Plaintiff additionally argues the VE "explicitly testified

4   that a restriction to simple, routine, repetitive tasks (as adopted by the ALJ) would prohibit the

5   ability to carry out detailed instructions required by reasoning level 2 occupations."  (Doc. 23 p.

6   1) (citing AR 142).

7                              **1.      Standard of Law**

8        At step five of the sequential evaluation process, the Commissioner must "identify

9   specific jobs existing in substantial numbers in the national economy that [a] claimant can

10  perform despite [her] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015)

11  (citation and internal quotes omitted). The ALJ first assesses a claimant's RFC and then considers

12  potential occupations that the claimant may be able to perform with reference to the DOT.  *Id.*;

13  *Valentine*, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

14       Hypothetical questions posed to the VE must set out all the limitations and restrictions of

15  the claimant, as supported by the medical record.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

16  1988).  If the testimony of a VE is used, the VE must identify a specific job or jobs in the national

17  economy that have "requirements that the claimant's physical and mental abilities and vocational

18  qualifications would satisfy."  *Garcia v. Comm'r of Soc. Sec.*, No. 1:22-cv-01479-SAB, 2023 WL

19  5917996, at *10 (E.D. Cal. Sept. 11, 2023) (citing 20 C.F.R. § 404.1566(b)); *Burkhart v. Bowen*,

20  856 F.2d 1335, 1340 n.3 (9th Cir. 1988).

21       "The DOT lists maximum requirements of occupations generally performed, not the range

22  of requirements of a particular job as it is performed in specific settings." SSR 00-4p, *available at*

23  2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers to the

24  collective description of those jobs.  Each occupation represents numerous jobs.  *Id*.

25       Because the DOT is not comprehensive, "[i]ntroduction of evidence of the characteristics

26  of specific jobs available in the local area through the testimony of a [VE] is appropriate, even

27  though the job traits may vary from the way the job title is classified in the DOT." *Johnson v.

28  Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  Indeed, a VE might be more knowledgeable about a

                                        7

1   particular job's requirements due to their experience in job placement or career counseling.  SSR

2   00-4p. Therefore, a VE may be able to offer more specific information about jobs or occupations

3   than provided in the DOT. *Id*.  The ALJ permissibly may rely on VE testimony regarding "(1)

4   what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of

5   such jobs in the national economy." *Tackett*, 180 F.3d at 1101.

6       If there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is

7   required to reconcile the inconsistency.  The ALJ may accomplish this by providing a reasonable

8   explanation for the conflict before relying on the VE to support a determination or decision about

9   whether the claimant is disabled. SSR 00-4p, at *4; *see also Johnson*, 60 F.3d at 1435 (holding

10  that if the ALJ relies on VE testimony that contradicts the DOT, the record must contain

11  "persuasive evidence to support the deviation.") "An example of a conflict between the DOT and

12  a VE's testimony is when the DOT's description of a job includes activities a claimant is

13  precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform

14  that job." *Martinez v. Colvin*, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept.

15  8, 2015) (citations omitted); *Zavalin*, 778 F.3d at 846 (noting an apparent conflict where "expert

16  testimony that a claimant can perform an occupation involving DOT requirements that appear

17  more than the claimant can handle[.]")  The ALJ must inquire on the record during the disability

18  hearing as to whether there is an inconsistency.  SSR 00-4p, at *4; *Massachi v. Astrue*, 486 F.3d

19  1149 1153-54 (9th Cir. 2007).  In addition, neither the DOT nor the VE's evidence "trumps" the

20  other when there is a conflict. Instead, the ALJ must resolve the conflict by determining if the

21  explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony

22  rather than the DOT information.  SSR 00-4p, at *2.

23      If the ALJ fails to resolve an apparent inconsistency, the Court is left with a "gap in the

24  record that precludes [it] from determining whether the ALJ's decision is supported by substantial

25  evidence." *Zavalin*, 778 F.3d at 846.  However, such a deficiency may amount to harmless error if

26  there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify

27  any potential conflicts."  *Massachi*, 486 F.3d at 1154 n.19.

28

8

**2.     There is No Apparent Conflict Between Plaintiff's RFC and the Occupations Identified by the VE**

Plaintiff argues that the ALJ erred by finding that Plaintiff could work as an office helper, photocopy machine operator, and garment sorter — all of which required a reasoning level of two.  *See Office Helper*, DOT 239.567-010, *available at* 1191 WL 672232 (Jan. 1, 2016); *Photocopying-Machine Operator*, DOT 207.685-014, available at 1191 WL 671745 (Jan. 1, 2016); *Garment Sorter*, DOT 222.687-014, *available at* 1191WL 672131 (Jan. 1, 2016).  The DOT defines level two reasoning as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702.  Plaintiff argues that reasoning level two implicated in the three occupations identified by the VE and accepted by the ALJ conflicts with Plaintiff's RFC limitation to "simple, routine, and repetitive tasks."

In *Zavalin*, the Ninth Circuit noted that an RFC limitation to "simple and routine work tasks" appeared to be consistent with level two reasoning.  778 F.3d at 847 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)).  Like the *Zavalin* court, numerous district courts, including other judges of this Court with whom the undersigned agrees, have held that the ability to perform simple, routine, and repetitive tasks is consistent with level two reasoning.  *See Gill v. Comm'r of Soc. Sec.*, No. 1:22-cv-01625-SAB, 2024 WL 1160500, at *14 (E.D. Cal. Mar. 18, 2024) ("[T]he Court finds no apparent conflict between Plaintiff's ability to understand, remember and carry out simple instructions and make simple work-related decisions as found in his RFC and jobs requiring Level 2 reasoning."); *Mendoza v. Comm'r of Soc. Sec.*, No. 1:23-cv-00350-EPG, 2024 WL 1257359, at *7 (E.D. Cal. Mar. 25, 2024) (collecting cases); *Kellina M. v. Comm'r, Soc. Sec. Admin*, No. 3:22-cv-01997-YY, 2023 WL 6239638, at *3 (D. Or. Sept. 26, 2023) (citing cases); *Miller v. Kijakazi*, No. CV-20-1725-PHX-MTL, 2021 WL 5768811, at *8 (D. Ariz. Dec. 6, 2021) ("[A] limitation to work involving only 'simple tasks,' 'simple, repetitive tasks,' or 'simple, routine, repetitive work,' is consistent with the ability to perform Level 2 Jobs."); *Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28,

1   2011) ("The Court recognizes, as defendant points out, that the weight of prevailing authority

2   precludes a finding of any inconsistency between a reasoning level of two and a mere limitation

3   to simple, repetitive tasks or unskilled work").

4          Separately, Plaintiff argues a conflict requiring resolution by the ALJ was created when

5   the VE "explicitly testified that a restriction to simple, routine, repetitive tasks (as adopted by the

6   ALJ) would prohibit the ability to carry out detailed instructions required by reasoning level 2

7   occupations." (Doc. 20 pp. 5-6); (Doc. 23 p. 1) (citing AR 142).  Even assuming the cited

8   exchange between the VE and Plaintiff's attorney created a conflict requiring follow-up inquiry

9   by the ALJ, the Court finds any procedural error to be harmless.  That is because (as explained

10  above) there is no conflict between an RFC limitation to simple, routine, and repetitive and

11  reasoning level two.  *See Massachi*, 486 F.3d at 1154 n.19 (apparent unresolved conflict

12  implicated by VE's testimony deemed harmless error where there is no conflict); *Ranstrom v.*

13  *Colvin*, 622 Fed. Appx. 687, 689 (9th Cir. 2015) (ALJ's failure to inquire into an apparent

14  conflict deemed harmless because no actual conflict exists between an RFC's "simple decision-

15  making" limitation and reasoning level two); *see also Meade v. Kijakazi*, No. 1:20-cv-00519-

16  BAM, 2021 WL 4429418, at *7-8 (E.D. Cal. Sept. 27, 2021) ("The Court finds that any error was

17  harmless because there is no conflict between the RFC finding that Plaintiff was limited to

18  simple, routine work-related decisions and Reasoning Level 2's requirement that an individual be

19  able to apply 'detailed but uninvolved written or oral instructions.'"); *Barrios v. Astrue*, No., 2010

20  WL 3825684, at *8 (E.D. Cal. Sept. 28, 2010) (same).[6]

21         Based on the foregoing authority and analysis, the Court finds that the ALJ committed no

22  error in accepting the occupations identified by the VE as consistent with Plaintiff's RFC, and

23  that any error by the ALJ in resolving a conflict implicated by the VE's testimony concerning

24  Plaintiff's ability to work with detailed instructions was harmless.

25  ────────────────

26         [6] In support of her argument, Plaintiff cites as "effectively identical" to Plaintiff's case the
    out-of-Circuit cases of *Alvarado v. Colvin*, 147 F.Supp.3d 297 (E.D. Pa. 2015) and *Upshur v.*
27  *Colvin*, 200 F.Supp.3d 503 (E.D. Pa. 2016).  Neither of the courts in those cases conducted a
    harmless error analysis with respect to the unresolved conflict in a VE's testimony.  The
28  undersigned further finds *Upshur* unpersuasive as the conflict at issue in that case related to
    occupations implicating reasoning level three.

                                            10

1

      **B.**      **Whether the Decision of the ALJ or Appeals Council Judges Is**

2

                       **Constitutionally Defective**

3

      In her opening brief, Plaintiff separately argues that remand is warranted because

4

decisions adverse to Plaintiff by the adjudicating ALJ and Appeals Council judges derived from a

5

statutory scheme that violates the separation of powers. (Doc. 20 pp. 7-10).  In her reply brief,

6

Plaintiff appears to abandon any separation-of-powers related argument that she suffered injuries

7

on account of the ALJ's denial of benefits[7] but maintains that she was denied a constitutionally

8

valid adjudication process and a constitutionally valid determination from the Appeals Council.

9

(Doc. 23 p. 3).

10

      In opposition, the Commissioner agrees that "42 U.S.C. § 902(a)(3) violates the separation

11

of powers to the extent it is construed as limiting the President's authority to remove the

12

Commissioner without cause."  (Doc. 22 p. 5).  However, under *Collins v. Yellen*, 141 S. Ct.

13

1761, 1787-89 (2021), the Commissioner argues that even where an unconstitutional statutory

14

removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction

15

actually caused her harm.  *Id.*[8]

16

      "Under our Constitution, the 'executive Power' – all of it – is 'vested in a President,' who

17

must 'take Care that the Laws be faithfully executed.'"  *Seila Law LLC v. Consumer Fin. Prot.*

18

*Bureau*, 591 U.S. 197, 203 (2020) (quoting Art. II, § 1, cl. 1; id., § 3).  "Because no single person

19

could fulfill that responsibility alone, the Framers expected that the President would rely on

20

subordinate officers for assistance."  *Id.* at 203-04.  Thus, the President is constitutionally

21

———————————————

22

     [7] In particular, Plaintiff asserts the following: "Plaintiff will not pursue the ALJ issue [denial of benefits] any further because the ALJ issued his decision while former President Trump was still in office. However, Plaintiff suffered two specific additional injuries, beyond a mere denial of benefits … [identifying Appeals Council-derived injuries]."

23

24

25

     [8]     The Commissioner separately notes that the presiding ALJ here was appointed by an acting Commissioner not subject to the removal restriction within Section 902(a)(3) and, thus, that Plaintiff's argument is inapt.  The Court agrees.  *See, e.g.*, *White v. Commissioner of Soc. Sec.*, No. 2:20-cv-1695-KJN, 2022 WL 463318, at *7 (E.D. Cal. Feb. 15, 2022) (finding "no unconstitutional appointments violation exists" where ALJ held office under an appointment legally ratified by an action Commissioner).  In any event, as set forth above, the Court construes Plaintiff's reply brief as a withdrawal of her argument that the ALJ's denial of benefits warrants remand due to any unconstitutional statutory scheme.

26

27

28

authorized to select and remove executive officers as part of the executive power under Article II. *Id.* at 204 (citing *Myers v. United States*, 272 U.S. 52 (1926)).  For instance, the President appoints and the Senate confirms the Commissioner of the Social Security Administration.  *See* 42 U.S.C. § 902(a)(1). "An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).  Relevant here, Andrew Saul served as Commissioner from June 17, 2019, until July 9, 2021; and beginning on July 9, 2021, Kilolo Kijakazi currently serves as Acting Commissioner.  *See* 42 U.S.C. § 902(b)(4) ("The Deputy Commissioner shall be Acting Commissioner of the Administration during the absence or disability of the Commissioner and...in the event of a vacancy in the office of the Commissioner.").

In *Kaufmann v. Kijakazi*, the Ninth Circuit found that the removal provision in 42 U.S.C. § 902(a)(3) violates separation of powers principles as it limits the President's ability to remove the Commissioner only for "neglect of duty or malfeasance in office."  32 F.4th 843, 849 (9th Cir. 2022).  However, the Court found that the unconstitutional provision does not necessarily taint the remainder of the statute since the offending provision may be severed from the constitutionally valid provisions of the statute.  *Id.* (citing *Seila Law*, 591 U.S. at 233).  Moreover, an unconstitutional removal provision does not affect the *authority* of the underlying agency officials to act*.  Id.* (citing *Collins*, 141 S.Ct. at 1787-88 & n.23).  And, consistent with *Collins*, the *Kaufmann* court reiterated that a claimant must demonstrate how the unconstitutional removal provision caused her actual harm.  *Id.*  (citations omitted).

In her reply, Plaintiff argues that the President strongly disapproved of the policy adjudication framework and processes established by the Commissioner at the time and removed him as soon as he believed that he could legally do so.  (Doc. 23).  The court in *Kaufmann* rejected a similar assertion and found that such policy-based arguments are not particularized to a plaintiff, holding "if we agreed, then it would require us to undo *all* disability decisions made by the Social Security Administration while the removal provision was operative."  *Kaufmann,* 32 F.4th at 850.

Plaintiff's arguments that the outcome of her disability claims would have been different

had the President immediately removed Commissioner Saul once he was inaugurated are too speculative.  To be entitled to relief, the Ninth Circuit has noted that particularized harm is required – something akin to an allegation that a Commissioner acting pursuant to a constitutionally infirm appointment directed the Appeals council to decide her case in a specific way.  *Kaufmann*, 32 F.4th at 850.  Plaintiff's allegations of harm – that she suffered from a constitutionally deficient adjudication process and decision by the Appeals Council (Doc. 23 p. 3) – fall short of this level of specificity.  *See Ward v. Comm'r of Soc. Sec.*, No., 2022 WL 4008024, at *10 (D. Ariz. Sept. 2, 2022) (finding claims plaintiff "did not receive a constitutionally valid adjudication process from SSA's Appeals Council" and a "constitutionally valid determination by the Appeals Council" to be "unavailing" and insufficient harm to warrant remand); *Ramos v. Comm'r of Soc. Sec.*, No. 1:20-cv-01606-EPG, 2022 WL 10508, at *4 (E.D. Cal. Jan. 11, 2022) (rejecting plaintiff's argument that she has established sufficient harm based on the President's delay in terminating Commissioner Saul and her denial of benefits).

**IV.    Conclusion**

In light of the foregoing, it is HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 20) is DENIED;

2. The decision of the Commissioner of Social Security is AFFIRMED.

3. The Clerk of the Court is directed to enter judgment in favor of the Commissioner of Social Security and close this case.

IT IS SO ORDERED.

Dated:   **May 14, 2024**

UNITED STATES MAGISTRATE JUDGE